SEND

                                              ENTER




                    UNITED STATES DISTRICT COURT

                    CENTRAL DISTRICT OF CALIFORNIA



RONALD FLORENCE,                    )     No. EDCV 05-0954-RC
                                    )
          Plaintiff,                )
                                    )     OPINION AND ORDER
     v.                             )
                                    )
MICHAEL J. ASTRUE,[1]               )
Commissioner of Social Security,    )
                                    )
          Defendant.                )
_____)


     Plaintiff Ronald Florence filed a complaint on October 19, 2005,
seeking review of the Commissioner's decision denying his application
for disability benefits.  The Commissioner answered the complaint on
March 7, 2006, and the parties filed a joint stipulation on May 30,
2006.


                           **BACKGROUND**

                               **I**

     On March 12, 2003, plaintiff applied for disability benefits

_____

     [1]  Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue
is substituted as the defendant in this action.

under the Supplemental Security Income ("SSI") program of Title XVI of the Act, 42 U.S.C. § 1382(a), claiming an inability to work since October 1, 2002, due to blindness and headaches.  Certified Administrative Record ("A.R.") 40-42, 59.  The plaintiff's application was denied initially on April 25, 2003, and was denied again on August 7, 2003, following reconsideration.  A.R. 19-28.  The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Bernard A. Trembly ("ALJ") on October 1, 2004.  A.R. 29, 164-82.  On February 15, 2005, ALJ issued a decision finding plaintiff is not disabled.  A.R. 7-14.  The plaintiff appealed this decision to the Appeals Council, which denied review on September 6, 2005.  A.R. 3-6.


**II**

The plaintiff, who was born on June 27, 1959, is currently 48 years old.  A.R. 40, 167.  He is a high school graduate, and has previously worked as a general laborer and an assistant manager at a mobile home park.  A.R. 60, 65, 68-75, 167.  Currently, plaintiff, who has served time in prison, is homeless.  A.R. 96-119, 126-31.


The plaintiff was severely injured in an automobile accident in May of 1979, sustaining injuries to his head, face, and lower back, as well as losing his right eye.[2]  A.R. 120.


On April 2, 2003, Lilian Chang, M.D., an internist, examined

---

[2]  Although plaintiff has both physical and mental complaints, this opinion addresses only plaintiff's physical limitations.

2

plaintiff, noting his right eye was missing and finding plaintiff's "[v]isual fields to confrontation are intact on the left" with mildly decreased visual acuity on the left and a pterygium[3] with minimal encroachment on the left pupil. A.R. 120-24. The plaintiff's vision was determined to be 20/70 in his left eye, without glasses, and 20/50, with pinhole correction. A.R. 125. Additionally, Dr. Chang found plaintiff had "mildly" decreased lumbar spine range of motion due to pain and "mildly" decreased hearing bilaterally, although plaintiff was able to carry out conversation within a normal speaking distance. A.R. 123-24. Dr. Chang opined plaintiff: can lift and carry 50 pounds occasionally and 25 pounds frequently; he can stand and walk for at least 6 hours in an 8-hour work day, and sit for 8 hours in an 8-hour work day; he can frequently bend, stoop and crouch; he has "mild" visual limitations; but he is not otherwise limited. A.R. 124.

On July 29, 2003, Donald E. Shearer, M.D., examined plaintiff and diagnosed him with an enucleated[4] right eye, a pterygium in the left eye, a left eye refractive error, and presbyopia.[5] A.R. 144-46. Dr.

---

[3] A pterygium is "a wing-like structure, applied especially to an abnormal triangular fold of membrane, in the interpalpebral fissure, extending from the conjunctiva to the cornea, being immovably united to the cornea at its apex, firmly attached to the sclera throughout its middle portion, and merged with the conjunctiva at its base." Dorland's Illustrated Medical Dictionary, 1490 (29th ed. 2000).

[4] Enucleated means "removed[.]" Dorland's Illustrated Medical Dictionary at 603.

[5] Presbyopia is "hyperopia [farsightedness] and impairment of vision due to advancing years or to old age; it is dependent on the diminution of the power of accommodation from loss of

1 Shearer determined plaintiff's visual acuity in his left eye is 20/60,

2 without glasses, and 20/30, with glasses.  A.R. 144.

3

4                          **DISCUSSION**

5                             **III**

6     The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

7 review the Commissioner's decision denying plaintiff disability

8 benefits to determine if his findings are supported by substantial

9 evidence and whether the Commissioner used the proper legal standards

10 in reaching his decision.  Parra v. Astrue, 481 F.3d 742, 746 (9th

11 Cir. 2007); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

12 2006).

13

14     The claimant is "disabled" for the purpose of receiving benefits

15 under the Act if he is unable to engage in any substantial gainful

16 activity due to an impairment which has lasted, or is expected to

17 last, for a continuous period of at least twelve months.  42 U.S.C. §

18 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the

19 burden of establishing a prima facie case of disability."  Roberts v.

20 Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

21 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

22

23     The Commissioner has promulgated regulations establishing a five-

24 step sequential evaluation process for the ALJ to follow in a

25 disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ

26 _____

27 elasticity of the crystalline lens, causing the near point of

28 distinct vision to be removed farther from the eye."  Id. at 854,
1453.

4

must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the **Second Step,** the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 416.920(c). If so, in the **Third Step,** the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 416.920(d). If not, in the **Fourth Step,** the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. § 416.920(f). If not, in **Step Five,** the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff "has not engaged in substantial gainful activity since October 1, 2002." (Step One). The ALJ then found plaintiff "has severe right eye blindness, history of headaches, history of seizures, history of meningitis, history of substance abuse, history of back pain, presbyopia, left eye pterygium, and mildly decreased hearing," (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is unable to perform his past relevant work. (Step Four). Finally, the ALJ concluded plaintiff can perform a significant number of jobs in the national economy; therefore, he is not disabled. (Step Five).

# IV

At Step Five, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy. Widmark v. Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006); Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).  To meet this burden, the Commissioner "must 'identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite [his] identified limitations.'" Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)).  There are two ways for the Commissioner to meet this burden: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[6] Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); Widmark, 454 F.3d at 1069.  However, the ALJ cannot rely on the Grids when the claimant suffers from significant nonexertional limitations; rather, he must obtain a vocational expert's testimony. Widmark, 454 F.3d at 1069; Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002).

//

//

---

[6] The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants.  Each rule defines a vocational profile and determines whether sufficient work exists in the national economy.  These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity." Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996) (citations omitted).

1    Here, the ALJ applied Rule 202.20 of the Grids[7] as a "framework"
2  to find plaintiff is not disabled.  First, however, the ALJ determined
3  plaintiff has severe vision impairments, i.e., right eye blindness and
4  a left eye pterygium and presbyopia, and the residual functional
5  capacity ("RFC") to perform light work, concluding plaintiff's severe
6  impairments do not significantly limit his RFC.  See A.R. 13-14.  The
7  plaintiff, however, contends the ALJ's Step Five conclusion that he
8  can perform other work is not supported by substantial evidence
9  because the ALJ failed to have a vocational expert testify.  The
10 plaintiff is correct.

11

12    "A non-exertional impairment is an impairment 'that limits [the
13 claimant's] ability to work without directly affecting his . . .
14 strength.'"  Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001)
15 (quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573,
16 579 (9th Cir. 1988)).  Visual impairments are nonexertional
17 impairments, Tackett, 180 F.3d at 1101-02; Burkhart v. Bowen, 856 F.2d
18 1335, 1341 n.4 (9th Cir. 1988), and "significant non-exertional
19 impairments, such as poor vision. . . , may make reliance on the grids
20 inappropriate."  Tackett, 180 F.3d at 1101-02; Desrosiers, 846 F.2d at
21 577.

22

23    In this case, plaintiff is missing his right eye and has
24 decreased vision in his left eye, and these visual limitations are

25

26
27    [7]  Rule 202.20 provides that a younger individual who is a
high school graduate or more, who has unskilled or no prior work
experience, and who is able to perform light work, is not
28 disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.20.

significant nonexertional limitations precluding the application of
the Grids.  See Burkhart, 856 F.2d at 1341 n.4 ("[Claimant's] vision
problems constitute a[] . . . non-exertional limitation that would
prevent use of the grids in his case."); Doolittle v. Apfel, 249 F.3d
810, 811-12 (8th Cir. 2001) (Given the claimant's loss of visual
acuity in his left eye, "it was incumbent on the ALJ to call a
vocational expert to determine whether there are jobs in the national
economy which the claimant can perform, and if so, the extent to which
that base may be diminished for persons with such an impairment.");
Sykes v. Apfel, 228 F.3d 259, 270 (3d Cir. 2000) (The ALJ could not
rely on the Grids to determine the claimant was not disabled when the
claimant was blind in one eye and "[t]he Social Security
Administration has not conducted a rulemaking establishing either that
the lack of binocular vision does not significantly diminish the
occupational base for light work or more generally establishing common
facts applicable to individuals with [the claimant's] set of
impairments.  The grids establish, for exertional impairments only,
that jobs exist in the national economy that people with those
impairments can perform.  When a claimant has an additional
nonexertional impairment, the question whether that impairment
diminishes his residual functional capacity is functionally the same
as the question whether there are jobs in the national economy that he
can perform given his combination of impairments.  The grids do not
purport to answer this question, and thus under [Heckler v. Campbell,
461 U.S. 458, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983)] the practice of
the ALJ determining without taking additional evidence the effect of
the nonexertional impairment on residual functional capacity cannot
stand."); Francis v. Heckler, 749 F.2d 1562, 1566-67 (11th Cir. 1985)

(The ALJ erred in relying on the Grids when the claimant was blind in one eye and had vision only correctable to 20/40 in the other eye.). Thus, "[b]ecause an ALJ may rely solely on the [Grids] only when a claimant can perform the full range of applicable work, . . . the ALJ erred in failing to obtain the testimony of a vocational expert[,]" and his Step Five finding is not supported by substantial evidence. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998).

V

When the Commissioner's decision is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). "Generally when a court . . . reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004). Here, remand is appropriate so the ALJ can obtain a

//
//
//
//
//
//
//
//

1 | vocational expert's testimony.[8]   Widmark, 454 F.3d at 1070; Bruton,
2 | 268 F.3d at 828-29.

3

4 | **ORDER**

5 |     IT IS ORDERED that: (1) plaintiff's request for relief is
6 | granted; and (2) the Commissioner's decision is reversed, and the
7 | action is remanded to the Social Security Administration for further
8 | proceedings consistent with this Opinion and Order, pursuant to
9 | sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered
10 | accordingly.

11

12 | DATE:     July 23, 2007                    /s/ Rosalyn M. Chapman
13 |                                   ROSALYN M. CHAPMAN
      UNITED STATES MAGISTRATE JUDGE

---

25 |     [8]   Having reached this conclusion, it is unnecessary to
26 | address the other claims plaintiff raises, none of which would
   | provide plaintiff with further relief than granted herein, and
27 | all of which can be appropriately addressed on remand.

28 | R&R-MDO\05-0954.mdo
   | 7/23/07